UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

FREDERICK SHORT                           *        CIVIL ACTION

VERSUS                                    *        NUMBER: 06-10568

MANSON GULF, L.L.C.                       *        SECTION "L" (3)

ORDER & REASONS

     Before the Court is the Defendant Manson Gulf, L.L.C.'s Motion for Summary Judgment

(Rec. Doc. 60).  For the following reasons, Manson Gulf's motion is now GRANTED and this

case will be dismissed.

I.       BACKGROUND

     This maritime personal injury case arises out of an offshore accident that occurred on or

about August 30, 2006.  At that time, the Plaintiff Frederick Short was employed as a welder by

Inspection Construction Unlimited, L.L.C. ("ICU").  Pursuant to a contract between ICU and

Manson Gulf, L.L.C. ("Manson Gulf"), the Plaintiff was dispatched to Manson Gulf to assist

with the construction and installation of a fixed platform on the Outer Continental Shelf in the

Gulf of Mexico.  The Plaintiff's immediate supervisor was Nick Williams, Manson Gulf's

welding foreman.  The bulk of the Plaintiff's welding work occurred on the fixed platform,

though he also did some incidental welding on both the vessel D/B WOTAN, which was owned

and operated by Manson Gulf, and on a material barge located next to the D/B WOTAN.  The

D/B WOTAN was located adjacent to the platform and served as crew quarters and a staging

1

area for the platform work.  However, Manson Gulf did not own the material barge, rather, it was owned by Canal Barge Company, Inc.

The Plaintiff was allegedly injured when he fell from a ladder on the material barge. Specifically, the Plaintiff alleges that the deck of the material barge was covered in diesel and hydraulic fuel that had been leaking for several days, and that this contributed to the ladder slipping from under him, causing him to fall backwards and hit his head and lower back on the deck.  In addition to the slippery deck, the Plaintiff alleges that he instructed a crew member to hold the ladder as he climbed it, but that the crew member did not speak English and could not understand his instruction.

On November 27, 2006, the Plaintiff filed suit against Manson Gulf, asserting claims under the Jones Act and the general maritime law, including claims for maintenance and cure. Alternatively, the Plaintiff asserted claims under the Longshoremen and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901, *et seq.*, and the dual-capacity doctrine.  On December 19, 2006, the Plaintiff added ICU as a defendant in an amended complaint.[1]

On March 29, 2007, the Plaintiff filed a motion to sever his claim for maintenance and cure and requested an expedited trial of this claim.  The Court granted the Plaintiff's request and scheduled an expedited bench trial on this issue.  On June 22, 2007, at the conclusion of the trial, the Court dismissed the Plaintiff's claims for maintenance and cure, dictating on the record its finding that the Plaintiff was not a "seaman," given that the bulk of his welding work occurred on the platform.  Based on this finding, the Court subsequently issued a Rule 54(b) partial

---

[1]  Manson Gulf also initially asserted a third-party complaint against ICU and Lexington Insurance Company, but has since dismissed its third-party complaint without prejudice.  *See* Rec. Doc. 29.

2

judgment dismissing the Plaintiff's claims against ICU.  *See* Rec. Doc. 51.  Thus, all that remains in this case are the Plaintiff's § 905(b) claims against Manson Gulf.

## II.    PRESENT MOTION

On December 28, 2007, Manson Gulf filed the instant motion for summary judgment seeking dismissal of the Plaintiff's remaining claims.  Although the Plaintiff was employed by ICU, Manson Gulf argues that at the time of the accident, the Plaintiff was simultaneously its borrowed employee.  Thus, Manson Gulf argues that the Plaintiff's tort claims against it are barred as a matter of law under § 905(a) of the LHWCA.  Belatedly, the Plaintiff concedes that he was Manson Gulf's borrowed employee at the time of his injury, but argues that Manson Gulf may nevertheless be held liable for vessel negligence under § 905(b) of the LHWCA pursuant to the dual-capacity doctrine.[2]

## III.   LAW & ANALYSIS

### A.    Standard of Review

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits show that there is no genuine issue as to any material fact and that the defendant is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56.  If the party moving for summary judgment demonstrates the absence of a genuine issue of

---

[2]  Manson Gulf's motion was originally set for hearing on January 30, 2008.  One day before the hearing date, and five days after his opposition was due, the Plaintiff moved for a continuance.  The Court reluctantly granted the Plaintiff's motion, re-set the motion for hearing on February 13, 2008, and ordered the Plaintiff to respond no later than February 6, 2008.  The Plaintiff filed his opposition brief two days late on February 8, 2008.  The Court subsequently denied Manson Gulf's motion to strike the opposition brief as untimely, *see* Rec. Doc. 77, so that this matter could be addressed on the merits.  Plaintiff's counsel's history of tardiness in this matter recently continued leading up to the pretrial conference.  *See* Rec. Doc. 91.

material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). "[A] dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986).

The burden of demonstrating the existence of a genuine issue is not met by "metaphysical doubt" or "unsubstantiated assertions." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Matsushita*, 475 U.S. at 588). The Court must "resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Id.* The Court does not, "in the absence of proof, assume that the nonmoving party could or would prove the necessary facts." *Id.* If the evidence leads to only one reasonable conclusion, summary judgment is proper. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

**B.     Section 905(b)**

The accident in this case occurred during operations incidental to the construction of an oil platform on the Outer Continental Shelf. The Plaintiff brings his remaining claims under § 905(b) of the LHWCA, which is made applicable by the Outer Continental Shelf Lands Act, 43 U.S.C. § 1333(b). *See, e.g., Hebron v. Union Oil Co. of California*, 634 F.2d 245, 247 (5th Cir. Unit A Jan. 1981).

Under § 904 of the LHWCA, an employee injured in the course and scope of his employment only has a workers compensation claim against his employer. *See* 33 U.S.C. § 904.

The employer cannot be held liable for additional damages in tort, the compensation remedy is exclusive. *See* 33 U.S.C. § 905(a). The United States Court of Appeals for the Fifth Circuit has held that a "borrowing employer" is also immune from tort liability, to the same extent that a direct or nominal employer is immune under § 905(a) of the LHWCA. *See, e.g., Total Marine Servs., Inc. v. Director, Office of Worker's Compensation Programs,* 87 F.3d 774, 777-78 (5th Cir. 1996). In this case, although the Plaintiff was employed by ICU, he concedes that he was also Manson Gulf's borrowed employee at the time of the accident.

Section 905(b) creates an exception to this compensation exclusivity rule. Under § 905(b), an employer who is a vessel owner may also be liable to his employee in tort if injury is caused by vessel negligence. *See Jones & Laughlin Steel Corp. v. Pfeifer,* 462 U.S. 523, 530 (1983) ("The first sentence of § 5(b) authorizes a longshoreman whose injury is caused by the negligence of a vessel to bring a separate action against such a vessel as a third party.") (internal footnote omitted); *see also Hitt v. Cliffs Drilling Co.*, No. 92-2954, 1993 WL 488570, at *1-2 (E.D. La. Nov. 22, 1993). The Fifth Circuit succinctly addressed this concept of "dual capacity" in *Levene v. Pintail Enterprises, Inc.*:

> When an employer acts in a dual capacity as vessel owner, the entity retains its immunity for acts taken in its capacity as an employer, but may still be sued "qua vessel" for acts of vessel negligence. The difference between the capacities in which an employer may act is extremely important. The availability of a tort remedy for vessel negligence is a limited exception to the general structure of the LHWCA, which, like state workers compensation schemes, generally replaces negligence causes of action against employers with a system of predetermined, standardized benefits. Therefore, we have held that an employer that also functions as a vessel owner is liable for vessel negligence under the same negligence standards applicable to an independent vessel owner. The LHWCA absolutely bars suit for all other acts taken in the capacity as the employer of the injured worker.

943 F.2d 528, 531 (5th Cir. 1991) (internal citations and footnote omitted).[3]

At least in this Circuit, it is clear that the decision of the United States Supreme Court in *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156 (1981), "defines the duties owed to an injured worker by a vessel owner acting in a dual capacity as employer." *Levene*, 943 F.2d at 533 (citing *Castorina v. Lykes Bros. S.S. Co.*, 758 F.2d 1025, 1033 (5th Cir. 1985)); *see also Hill v. Texaco, Inc.*, 674 F.2d 447, 451 (5th Cir. 1982).[4] Thus, a vessel owner owes three specific legal duties to independent contractors working on its vessel: "(1) the turnover duty, (2) the duty to protect against hazards arising in areas or equipment under the vessel's active control, and (3) the duty to intervene when the vessel owner knows of a serious hazard and the [independent contractor] improvidently decides to ignore that risk." *Manuel v. Cameron Offshore Boats, Inc.*, 103 F.3d 31, 33 (5th Cir. 1997). This Court has previously discussed these *Scindia* duties in significant detail, and will not repeat itself here. *See Clay v. Daiichi Shipping*, 74 F. Supp. 2d 665 (E.D. La. 1999).

In this case, the Plaintiff does not specify which *Scindia* duties were allegedly breached. Rather, the Plaintiff argues that the ladder he was climbing slipped for two reasons, both of

---

[3] The occupation-specific limitations placed on vessel negligence actions by Congress in 1984 are not implicated in the instant case. *See Gay v. Barge 266*, 915 F.2d 1007, 1010 (5th Cir. 1990) (discussing the statutory prohibition on § 905(b) suits by persons employed to provide shipbuilding, repairing, or breaking services); *New v. Associated Painting Servs., Inc.*, 863 F.2d 1205, 1210 (5th Cir. 1989) (noting that the 1984 amendments to the LHWCA preclude suits by persons "hired to restore a vessel to safe operating condition").

[4] *But see Gravatt v. City of New York*, 226 F.3d 108, 123 (2d Cir. 2000) ("It therefore appears that the *Scindia* tests for vessel negligence . . . cannot fully serve as the test for the negligence of a dual-capacity defendant in its vessel capacity . . . ."); *Morehead v. Atkinson-Kiewit, J/V*, 97 F.3d 603, 610 (1st Cir. 1996) ("[T]he Supreme Court has not yet had occasion to analyze the vessel's duties in a dual capacity case.").

which he contends demonstrate that Manson Gulf is liable for vessel negligence. First, the Plaintiff argues that the crew member who was supposed to be holding the ladder was from Mexico and did not speak English, and thus could not understand the Plaintiff's instruction to hold the ladder. Second, the Plaintiff argues that the deck of the barge was covered in diesel and hydraulic fuel that had been leaking for several days, which also allegedly contributed to the ladder slipping from under him. Ultimately, the Plaintiff argues that Manson Gulf should not have commenced the construction operations in question in light of these two allegedly unreasonable and dangerous conditions. The Court finds, however, that the Plaintiff's claims against Manson Gulf fail for three independent reasons.

First, although Manson Gulf owned the D/B WOTAN where the Plaintiff spent most of his free time, the alleged injury in this case occurred on board a material barge that was located next to the D/B WOTAN. It is undisputed that Manson Gulf did not own the material barge, but rather merely arranged for its use. *See* Tompkins Decl., Feb. 28, 2008 (Rec. Doc. 90-3). The Fifth Circuit was faced with a similar situation in the *Levene* case cited above, in which the plaintiff asked the court "to fashion a standard of care in which a vessel owner . . . must protect him from unreasonably dangerous conditions on any vessel he happens to board while carrying out his duties for his employer-vessel owner." *Levene*, 943 F.2d at 534. The Fifth Circuit rejected this argument outright:

> We cannot find in *Scindia* any mandate for extending the duty of a shipowner to protection against hazards on another ship. The very notion under the dual capacity doctrine of holding one single entity liable for the negligence of "the vessel" but not for the negligence of "the employer" serves to limit liability to those acts taken in connection with the owned vessel itself. Absent alteration by the Supreme Court of the fairly detailed duties it has interpreted § 905(b) as imposing, we decline to fashion a general standard of "reasonable care" that would require a shipowner to

7

protect against any and all hazards a longshoreman might encounter in the course of
his work.  Other than the duty to protect against hazards under control of the ship
. . . , we do not think *Scindia* imposes any duty on a shipowner to protect against
hazards arising on a separate ship.

*Levene*, 943 F.2d at 534.  Moreover, the limited exceptions identified in *Levene* are not

applicable in this case.  Accordingly, the Court finds that the Plaintiff's claims against Manson

Gulf for an injury that occurred on a separate material barge owned by a third party necessarily

fail under § 905(b).

  Second, assuming for the sake of argument that the traditional *Scindia* duties did apply

beyond the D/B WOTAN and specifically to the material barge in this case, the Plaintiff's

allegations nevertheless fail, even if they are assumed to be true.  With respect to the Plaintiff's

argument that Manson Gulf can be held liable for vessel negligence for providing an inadequate

Spanish-speaking crew, the Fifth Circuit recently rejected an identical argument.  *See*

*Prestenbach v. Global Int'l Marine Inc.*, 244 Fed. App'x 557, 560-61 (5th Cir. 2007) (noting that

the *Scindia* duties "relate primarily to the physical conditions of the ship" and holding that the

presence of two crew members who spoke only Spanish did not constitute vessel negligence

under any of the *Scindia* duties).  With respect to the Plaintiff's slippery deck argument, the

Court finds that the Plaintiff had "actual knowledge of [this] remediable hazardous condition,"

and thus that Manson Gulf's turnover duty is not implicated in this case.  *See Manuel*, 103 F.3d

at 34.  Moreover, the Court also finds that the Plaintiff has failed to raise a genuine issue of

material fact regarding Manson Gulf's "operational control" over the deck of the material barge,

such that Mason Gulf's active control duty is also not implicated in this case.  *See id.*

  Third, and finally, the Court is mindful that in dual capacity cases such as this, "[t]he

difference between the capacities in which an employer may act is extremely important." *Levene*, 943 F.2d at 531.  Assuming the Plaintiff's allegations are true, the most that could be said is that Manson Gulf's welding foreman Nick Williams may have been negligent.  However, the Court finds that such negligence would relate to Manson Gulf's activity as an employer, not as vessel owner, and thus that the Plaintiff's claims are precluded by § 905(a).

## IV.    CONCLUSION

For the foregoing reasons, IT IS ORDERED that the Defendant's Motion for Summary Judgment (Rec. Doc. 60) is GRANTED.  An appropriate judgment will issue dismissing the Plaintiff's remaining claims with prejudice.

New Orleans, Louisiana, this 29th day of February, 2008.

_____

UNITED STATES DISTRICT JUDGE